THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 2:06-cr-00031-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BRADLEY DALE WAYCASTER, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's "Motion for Immediate Release." [Doc. 60].

**I.    BACKGROUND**

In June 2007, the Defendant Bradley Dale Waycaster was convicted of one count of possession with intent to distribute cocaine and methamphetamine and was sentenced to 262 months' imprisonment. [Doc. 25]. The Defendant is currently incarcerated at FCI Beckley, and his projected release date is August 17, 2025.[1]

On September 21, 2020, the Defendant filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the

---

[1] See https://www.bop.gov/inmateloc/ (last visited Jan. 15, 2021).

ongoing COVID-19 pandemic. [Doc. 49]. The Government moved to dismiss the Defendant's motion based on the Defendant's failure to meet his burden of proving that he has exhausted his remedies with the BOP prior to filing his motion with this Court. [Doc. 53]. On November 2, 2020, the Court granted the Government's motion and denied the Defendant's motion for compassionate release without prejudice. [Doc. 55].

Thereafter, the Defendant moved for an extension of time to submit documentation in order to show that he had exhausted his administrative remedies. [Doc. 56]. On November 16, 2020, the Court denied the Defendant's motion as moot. [Doc. 57].

On January 11, 2021, the Court received the present "Motion for Immediate Release," in which the Defendant renews his request for a compassionate release due to the COVID-19 pandemic. [Doc. 60].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

By its plain language, § 3582(c)(1)(A) makes clear that a defendant must first exhaust all administrative remedies or wait thirty days after submitting a request for release from the warden without receiving any response before filing a motion for a sentence reduction.  The Court of Appeals for the Fourth Circuit has held that a district court lacks the authority to modify a sentence except in the narrow circumstances and procedures set forth in § 3582.  See United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010).[2]

Here, with respect to the exhaustion of his administrative rights, the Defendant asserts that he submitted a request for compassionate release to the warden of USP Atlanta on both September 28, 2020 and November 6,

---

[2] The Fourth Circuit has not yet ruled on whether the exhaustion requirements in § 3582(c)(1)(A) are jurisdictional or merely a claims-processing rule. This Court, however, need not decide that issue in order to resolve the present motion. Either way, the Defendant must exhaust his administrative remedies as defined in § 3582(c)(1)(A) before filing a motion for compassionate release in this Court. See Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); United States v. Williams, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (denying motion for reduction of sentence because defendant failed to exhaust his administrative remedies, but declining to decide whether exhaustion requirement is jurisdictional).

3

2020, but did not receive a response to either request within thirty (30) days.[3] [Id. at 2, 4]. Subsequent to the submission of these requests but prior to the time of the filing of his present motion, the Defendant was transferred to FCI Beckley. The Defendant offers no evidence that he has ever made a compassionate release request at the facility at which he is currently housed. As the Defendant has failed to exhaust his administrative rights with the warden of FCI Beckley—the facility at which he is currently housed—the Defendant's motion for compassionate release is subject to dismissal.

Even if the Defendant could demonstrate the exhaustion of the remedies provided by statute, the Court would still deny his motion. As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Even if extraordinary and compelling reasons are found, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

---

[3] The Defendant does not offer documentary evidence of either of these requests.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now

permitted to file their own motions for compassionate release.  In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence.  See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)").  Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise."  Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).  Nevertheless, § 1B1.13 "remains helpful guidance even when motions are filed by defendants."  Id. at 282 n.7.

The Defendant attempts to establish extraordinary and compelling reasons based on his particular susceptibility to the coronavirus due to his history of high blood pressure and a heart murmur.  [Doc. 60 at 8].  The Defendant offers no evidence that he, in fact, suffers from these conditions.  Even assuming that the Defendant does have these conditions, the Court notes that such conditions can be adequately treated and/or monitored at BOP through visits to BOP Health Services.  In any event, the CDC does not

recognize high blood pressure as a condition that places a person at an increased risk for severe illness or death.[4]  As for the Defendant's purported heart murmur, the CDC has recognized that certain heart conditions can place a person at an increased risk.[5]  However, a heart murmur can be harmless, and the Defendant has offered no documentation to the Court to show that his heart murmur is the result of a serious condition, such as heart valve disease.

Significantly, the Defendant—by his own admission—has already contracted the coronavirus and apparently recovered.  [See Doc. 60 at 3].  It appears, therefore, that his preexisting medical conditions did not result in severe illness or prolonged symptoms.

The Defendant contends that the fact that he has already contracted the illness constitutes another extraordinary and compelling reason for his release, as he "cannot risk another contraction of this disease."  [Id.].  The current scientific evidence suggests that reinfection is uncommon in the 90

---

[4] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (stating only that adults with hypertension "*might be at an increased risk* for severe illness") (last visited Jan. 15, 2021).

[5] See id. (discussing heart conditions that increase the risk of severe illness from COVID-19, such as heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension).

7

Case 2:06-cr-00031-MR-WCM   Document 63   Filed 01/19/21   Page 7 of 9

days after initial infection.[6]  The Defendant therefore is at less risk than the general population of suffering from a severe illness due to the virus for at least that time period, if not longer.  Additionally, vaccines are now being distributed, and BOP already has vaccinated nearly 14,000 people.[7] The Defendant's antibodies against the virus from the resolved infection likely will protect him until he receives a vaccine (if he has not received it already).  Regardless, the Defendant cannot now meet his burden of establishing that his risk is extraordinary and compelling because he has already contracted—and beaten—the virus .

    Finally, the Court notes that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates.[8]  These measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders.  Given the BOP's efforts, the fact that the Defendant faces a

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited Jan. 15, 2021).

[7] See https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited Jan. 15, 2021).

[8]  See  https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response  (last visited Jan. 15, 2021).

8

potential risk of contracting the virus for a second time while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i). Accordingly, the Defendant's motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Immediate Release" [Doc. 60] is **DENIED**.

**IT IS SO ORDERED.**

Signed: January 18, 2021

Martin Reidinger
Chief United States District Judge